UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOSE SEMORILE, JR.,

                        Plaintiff,


            -against-                                    05 Civ. 7261 (LAK)


CITY OF NEW YORK, et al.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


        Appearances:


                    Christina A. Leonard
                    CRONIN & BYCZEK, LLP
                    *Attorneys for Plaintiff*


                    Bruce Rosenbaum
                    Rippi Gill
                    Assistant Corporation Counsel
                    MICHAEL A. CARDOZO
                    CORPORATION COUNSEL OF THE CITY OF NEW YORK


LEWIS A. KAPLAN, *District Judge.*

            Plaintiff, a former member of the City's Department of Environmental Protection

("DEP") Police and a proponent of decertification of the union that represented such employees, was

brought up on administrative charges after testing positive for cocaine.  He was represented by

counsel provided by the union and, while so represented, resigned his employment rather than

proceed with the hearing to which he was entitled under state law and the collective bargaining agreement ("CBA").  He brought this action against the union and one of its officials as well as the City and three officials of the DEP claiming, among other things, that he did not knowingly use cocaine and that he was coerced into resigning by collusion between the DEP and the union in order to retaliate against him for seeking the union's decertification.  The action having been dismissed as against the union defendants for lack of jurisdiction, the City defendants now move to dismiss the complaint against them for failure to state a claim upon which relief may be granted.

*Facts*

*The Events at Issue*

The facts set forth in the complaint, which are assumed to be true for purposes of this motion, may be sketched quickly.[1]

Plaintiff and other City employees are represented by the Service Employees International Union Local 300 AFL-CIO ("SEIU").  Plaintiff, to the knowledge of defendants, has advocated decertification of the SEIU as collective bargaining agent for the DEP police as a result of his view that it has failed adequately to represent them.

On December 27, 2004, plaintiff purchased a cup of tea from a street vendor. Although he did not know it, the tea was a product imported from Peru and made from coca leaves and other substances.  Two days later, he and his partner were subjected to a random drug screening.

---

[1] The Court declines to consider the evidentiary materials submitted by the movants.

On January 13, 2005, plaintiff was informed that he had tested positive for cocaine and was served with a notice and statement of charges. He was suspended a few days later.

Plaintiff claims that he was unable to afford private legal counsel and so "was forced to accept legal representation from [the] SEIU."[2] The union assigned a lawyer from its regular outside law firm to represent plaintiff. Although plaintiff asked the SEIU to provide him with different counsel or to pay for counsel chosen by him, the union declined. Plaintiff then requested the City to retest his sample, but the City refused.

An "informal conference" on the charge against plaintiff was held by the DEP on February 1, 2005. Plaintiff explained that the positive test result was the product of his ingestion of tea which, unbeknownst to him, was made from coca leaves. The conference resulted, however, in a determination to uphold the charge of cocaine and a recommendation that plaintiff be terminated.

A formal hearing then was scheduled for February 17, 2005. On February 16, plaintiff heard from counsel representing him to the effect that counsel would try to establish plaintiff's defense of unknown ingestion causing a false positive.[3] Counsel repeated the City's prior offer to allow plaintiff to resign in exchange for the termination of the charges.[4]

---

[2]

Amended Complaint ("Cpt") ¶ 49.

[3]

*Id.* ¶ 57.

[4]

The letter stated that plaintiff had been advised of the lawyers' conflict of interest and nevertheless had chosen to go forward with the representation. Plaintiff claims that this was false because he proceeded with union-assigned counsel only because he could not afford to hire a lawyer himself and refused to appear without counsel. *Id.* ¶ 58. As the complaint makes crystal clear that plaintiff was fully aware of the conflict of interest – indeed, that is why he asked the union to provide him with a different lawyer or pay for a lawyer of his choice – it is difficult to see what is inaccurate about the letter. While it may be that plaintiff felt he had no practical alternative, and while that may have legal consequences,

The formal hearing convened on February 17 as scheduled.  Plaintiff claims that his lawyer failed to adduce evidence in support of his defense and advised plaintiff to accept the City's offer.  "Based upon the pressures placed upon [him] by union representation, the fact that [his] attorney did not have any evidence in his defense at the hearing," and other factors, plaintiff says he "was coerced into signing a letter of resignation effective July 8, 2005."[5]  As agreed, the City later withdrew the charge against plaintiff.[6]

*Plaintiff's Claims Against the City Defendants*

The complaint alleges in conclusory terms that the union and the City defendants conspired to terminate plaintiff's employment.[7]  The first claim for relief alleges violations by the City and the SEIU of Section 301 of the Labor Management Relations Act.[8]  The second, which is asserted only against the individual City defendants, claims that plaintiff was deprived of his rights to procedural due process under the Fourteenth Amendment, Section 75 of the New York Civil Service Law, and the CBA in that plaintiff was coerced into foregoing his right to a hearing on the charge against him.  The third, asserted against all defendants, claims that plaintiff was suspended

---

he knowingly elected to proceed with conflicted counsel in preference to representing himself.

[5] *Id.* ¶ 68.

[6] *Id.* ¶ 77.

[7] *Id.* ¶ 28.

[8] 29 U.S.C. § 185.

and terminated in retaliation for his exercise of First Amendment rights to speech and association in respect of the decertification effort.

The action previously was dismissed as to the SEIU defendants for lack of jurisdiction.[9] Plaintiff has withdrawn the first claim for relief insofar as it remains pending against other defendants.[10] Accordingly, what remains are plaintiff's procedural due process and retaliation claims against the City defendants.

*Discussion*

*The Due Process Claim*

The Court assumes *arguendo* that plaintiff had a protected property interest in his job of which he could not be deprived by the City without due process of law. Accordingly, the question is whether plaintiff had the process that was due.

> "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. In the latter case, the Due Process Clause . . . is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy. When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process."[11]

---

[9]

Docket item 21.

[10]

The Court is unable to cite to specific pages of plaintiff's memorandum, as they are not numbered.

[11]

*Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted).

Here, it is undisputed that plaintiff could have commenced a proceeding under Article 78 of the New York Civil Practice Law and Rules and there obtained judicial review of his resignation.[12] The question therefore is whether the claimed deprivation of plaintiff's right to a hearing was based on established procedures as distinguished from random, unauthorized acts.

Plaintiff argues that he was deprived of his rights in the context of the City's formal disciplinary process and, moreover, that the DEP officials allegedly involved were policy-making employees. But the first of these contentions improperly ignores the precise nature of the alleged wrong and the second disregards controlling authority.

Plaintiff's due process claim rests on the proposition that he was coerced into surrendering his right to a hearing on the cocaine charge by the alleged failure of the union-assigned lawyer adequately to prepare his case, his concern with that lawyer's divided loyalties, the harm that would have resulted from an adverse finding on the merits of the charge against him, and like considerations. There is no suggestion that coercion of employees to resign is an established part of the City's disciplinary structure. Indeed, there is no suggestion that any City employee did anything in that regard other than make the settlement offer and accept plaintiff's resignation after plaintiff agreed to it in the hearing room. Even accepting *arguendo* plaintiff's claim that the individual DEC employees conspired with the union to force plaintiff out, that was not a part of the structure of the City's disciplinary process. The fact that the process itself was the factual background against which the alleged conspiracy is said to have operated does not alone suffice to give rise to a right to a pre-deprivation as distinguished to a post-deprivation hearing.

---

[12] *Id*. at 881.

Nor is plaintiff's contention that the DEP employees were policy-making officials sufficient to place this case in the "established state procedures" rather than the "random, unauthorized acts" box. To be sure, the Circuit in *Burtnieks v. City of New York*[13] observed that "decisions made by officials with final authority over significant matters, which contravene the requirements of a written municipal code, can constitute established state procedure."[14] But here there is no claim that the City violated the requirements of a written municipal code by accepting plaintiff's resignation. Moreover, *Burtnieks* must be read in connection with the more recent case of *Giglio v. Dunn,*[15] which is directly in point.

The plaintiff in *Giglio* was a tenured high school principal who resigned his position and later sued the relevant school superintendents, the board of education, and others, claiming that he had been denied his due process right to a hearing because his resignation had been coerced. The Court of Appeals held that there was no due process violation because plaintiff could have claimed in an Article 78 proceeding that his resignation had been coerced and, if successful, obtained reinstatement and monetary relief.[16] In words entirely apt to this case, the panel wrote:

> "Although a resignation ostensibly voluntary may not be such at all, it nonetheless differs from an ordinary firing in two ways. First, it is not a unilateral act on the part of the employer, and, second, it does not purport to be for cause. Instead, it is a much-used, face-saving device designed to avoid the stigma of being fired . . . .

---

[13] 716 F.2d 982 (2d Cir. 1983).

[14] *Id.* at 988.

[15] 732 F.2d 1133 (2d Cir. 1984), *cert. denied*, 469 U.S. 932 (1984).

[16] *Id.* at 1134.

"A coerced resignation does not involve a showing of cause; it is simply the submission by an employee to a pressure exerted by a superior.  For this reason, it is hard to visualize what sort of prior hearing the Constitution would require the employer to conduct.  If there is no factual dispute between the employer and the employee, a hearing is meaningless.  When an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance.

"Due process requires only that a hearing be held at a meaningful time and in a meaningful manner.  Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter.

"*    *    *    Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity."[17]

Moreover, the majority reached that result over a dissent that argued, on the basis of *Burtnieks,* that the fact that the decision had been made by persons in authority satisfied the "established state procedure" requirement.[18]

*Giglio* controls this case.  Regardless of whether the DEP officials, as plaintiff alleges, were in league with the SEIU, a pre-resignation hearing on the issue of coercion would have been entirely impractical.  The remedy under Article 78 was quite adequate.  Plaintiff received all the process that was due.

*The First Amendment Retaliation Claim*

Plaintiff's third claim for relief is that he was suspended and terminated for exercising

---

[17]

*Id.* at 1134-35 (citations and footnote omitted).

[18]

*Id.* at 1137-38 (Cardamone, J., dissenting).

his First Amendment rights.[19]  As his complaint makes abundantly clear, however, he was suspended after he tested positive for cocaine and was not terminated at all – he resigned, allegedly under coercion.[20]  Thus, reading the complaint most generously, plaintiff presumably means to claim that he was singled out for drug testing and then provided with conflicted counsel as part of a conspiracy to retaliate against him for seeking to decertify the SEIU.

In order to make out a First Amendment retaliation claim, a public employee must allege that (1) the speech or association at issue was protected, (2) the employee suffered an adverse employment action, and (3) there was a causal connection between the protected speech and the adverse employment action.[21]  Even where the plaintiff makes out a *prima facie* case, the public employer may avoid liability by showing that it would have taken the same action even in the absence of the protected activity.[22]

The City defendants maintain that plaintiff's union decertification activities were not protected speech and, in any case, that the complaint fails adequately to allege any causal relationship between those activities and his termination.  It is necessary to reach only the latter argument.

Causation may be made out "(a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of

---

[19]

Cpt ¶ 101.

[20]

*Id.* ¶¶ 36, 38, 48, 68.

[21]

*E.g., Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir. 1994).

[22]

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283-87 (1977).

retaliatory animus."[23]   Here, there is no allegation of disparate treatment of similarly situated employees, and the complaint is devoid of any factual allegation supporting the claim of retaliatory motive on the part of the City defendants.  Plaintiff relies instead upon the temporal relationship between the decertification activities and the events that culminated in his resignation.[24]  But that is insufficient.

The complaint alleges that plaintiff and others initiated the decertification campaign in 2003 and that, at some unspecified time, he signed an affidavit filed in court in support of the decertification petition.[25]  The events that led to his resignation did not begin until December 29, 2004, when plaintiff was ordered to report for random drug screening.  Thus, the gap between the initiation of the decertification campaign and the drug screening appears to have been at least one and perhaps as long as two years.

There is no bright line test establishing the significance of any given time interval between the protected activity and the adverse employment action although, to be sure, the shorter the interval, the more likely that an inference of causation will be warranted.[26]   Nevertheless, it seems reasonably plain that an interval of one to two years is too great.

---

[23]

*Carr v. WestLB Admin., Inc.,* 171 F. Supp.2d 302, 309 (S.D.N.Y. 2001) (citing *DeCintio v. Westchester Co. Med. Ctr.,* 821 F.2d 111, 115 (2d Cir. 1987), *cert. denied,* 484 U.S. 965 (1987)).

[24]

*See* Pl. Mem., last two unnumbered pages.

[25]

Cpt. ¶¶ 25-26.

[26]

*See, e.g., Gorman-Bakos v. Cornell Coop. Ext. of Schenectady Co.,* 252 F.3d 545, 554-55 & n.5 (2d Cir. 2001).

The Court is mindful of the fact that plaintiff's memorandum of law seeks to imply that plaintiff's protected activity continued until the time of his resignation. But the sufficiency of complaints is not determined on the basis of inferences from unsworn statements in memoranda of law. If plaintiff has anything concrete to add, he will be afforded the opportunity to do so.

*Conclusion*

For the foregoing reasons, the motion of the remaining defendants to dismiss the amended complaint is granted in all respects. As it is not clear that plaintiff could allege no facts sufficient to make out a causal connection between allegedly protected activity and the adverse employment actions complained of, this order is without prejudice to the filing, on or before January 20, 2006, of a second amended complaint repleading only facts supporting an inference of causation on the retaliation claim.

SO ORDERED.

Dated: January 6, 2006

_____

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)