UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

JOSE SEMORILE, JR.,

                                      Plaintiff,

-against-

CITY OF NEW YORK, DAVID TWEEDY, individually and in his official capacity as Acting Commissioner of the NYC DEP, EDWARD WELCH, individually and in his official capacity as Chief of the NYC DEP Police Department, FRANK MILAZZO, individually and in his official capacity as Acting Commissioner of the NYC DEP, as Captain of the NYC DEP Police Department,

                                      Defendants.

------------------------------------------------------------------ x

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

05 CV 7261 (LAK)

        Defendants the City of New York, David Tweedy, Edward Welch, and Frank Milazzo ("Defendants"), by their attorney Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully submits, pursuant to Rule 56.1 of the Local Civil Rules of the Courts of the Southern District of New York, that the following facts are undisputed:

        1.     Employees of the City of New York ("City") in the title of Environmental Police Officer ("EPO") work in the City's Department of Environmental Protection ("DEP"). See Exhibit "M."

        2.     For purposes of New York's Criminal Procedure Law, EPOs are classed as "police officers," giving them the right, *inter alia*, to make arrests. See Exhibit "M."

        3.     Since 2001, EPOs in DEP have been subject to random drug tests under a policy promulgated by DEP. See Exhibit "D."

        4.     Plaintiff, Jose Semorile, Jr., was an EPO in DEP from December, 2001, until his resignation on February 17, 2005. See Exhibit "B" at 25; Exhibits "J" and "K."

5. In June 2003, plaintiff became involved in the decertification of Service Employee International Union Local 300 ("SEIU"). See Pl. Dep. Exhibit "A," ¶ 22; Exhibit "B" at 40.

6. Plaintiff testified that 90% of EPOs signed petitions to decertify Local 300. See Exhibit "B" at 42-43.

7. The decertification effort was successful. See Exhibit "M."

8. On December 29, 2004, pursuant to DEP's random drug screening policy, plaintiff, along with 16 other police officers, was ordered to appear at the NYPD Medical Division for a random drug test. See Exhibit "D" (Random Drug Screening Policy); Exhibit "E" (Medical Division Random Listing, December 29, 2004).

9. At the time there were approximately 156 EPOs in DEP. See Exhibit "M."

10. Plaintiff does not know how many of the 16 EPOs who were randomly tested had been a part of the effort to decertify Local 300. See Exhibits "C" and "D."

11. Pursuant to DEP's random drug screening policy, "[t]he unauthorized [sic] ingestion of commercially available products or substances including foods, cosmetics, and alleged health care products that contain or may contain illegal drugs . . . is prohibited. The unauthorized use or ingestion of these products would not be a valid defense for positive results on a drug test and would constitute sufficient cause for disciplinary action, including termination." See Exhibit "D."

12. On January 13, 2005, after testing positive for cocaine, plaintiff was served with a Notice and Statement of Charges. See Notice and Statement of Charges, dated

January 13, 2005, ("Charges") Exhibit "G."  Specifically, plaintiff was charged with the following:

| | |
|---|---|
| Charge I: | Misconduct (Violation of Rule E.11 of the Uniform Code of Discipline) |
| Specification 1: | While on duty, you were under the influence of a drug in that, on December 29, 2004, an analysis of your urine indicated the presence of cocaine. Id. |

13. As a result of his positive drug test result, on January 18, 2005, plaintiff was suspended for thirty days. See Exhibit "F" (January 18, 2005 Letter of Suspension).

14. On February 1, 2005, after an informal conference was held, the charges and specifications against plaintiff were substantiated, and the recommended penalty was termination. See Exhibit "H" (Notice of Determination after Information Conference (Charges Upheld)).

15. On February 3, 2005, plaintiff was served with a Notice of Formal Hearing, which was scheduled to be held on February 17, 2005. See Exhibit "I" (Notice of Formal Hearing Pursuant to Section 75 of the Civil Service Law).

16. On February 17, 2005, a formal hearing was scheduled to be held before the City's Office of Administrative Trials and Hearings ("OATH"). See Exhibit "J" (Transcript, dated February 17, 2005).

17. At the hearing, plaintiff, while represented by counsel, accepted a settlement of the pending disciplinary charges that provided as follows:

> That Mr. Semorile will tender, or has tendered an irrevocable resignation to be effective July 8, 2005, and he must exhaust all his leave balances, sick leave, vacation leave and his comp time. He will not return to his work location during this time period. That the Agency will withdraw the charges presently pending against him in this case, and

> expunge the record of his suspension. That Mr. Semorile will report tomorrow morning at nine o'clock to Elizabeth Simmons, the Bureau Administrator to be returned to payroll, and that this agreement is subject to the approval of the Deputy Commissioner of DEP.

Id.

18. Further, plaintiff was asked on the record by the OATH Administrative Law Judge Kevin Casey and by his union attorney, Joel Spivak, the following questions concerning the settlement reached by the parties and plaintiff gave the following answers:

> ALJ CASEY: Mr. Semorile, do you understand the agreement, and do you agree to this agreement? You've had an opportunity to confer with your lawyer?
>
> MR. SEMORILE: Yes, sir.
>
> ALJ CASEY: Thank you.
>
> MR. SPIVACK: May I inquire?
>
> ALJ CASEY: Sure.
>
> MR. SPIVACK: I mean, it's on behalf of Mr. Semorile, I entered the stipulation, and I just want to make sure that Mr. Semorile, do you understand what we've done here today?
>
> MR. SEMORILE: Yes, sir.
>
> MR. SPIVACK: And do you agree with what we've done here today?
>
> MR. SEMORILE: Yes, sir.
>
> MR. SPIVACK: And has it been explained to you, so you understand the pros and the cons of what we've done here today?
>
> MR. SEMORILE: Yes, sir.
>
> MR. SPIVACK: I'm satisfied, thank you. Id.

19. On or about February 17, 2005, plaintiff formally submitted his resignation letter, with an effective date of July 8, 2005. See Exhibit "K" (Resignation Letter).

20. On February 24, 2005, plaintiff was advised by letter, that the pending charges against him were withdrawn. See Exhibit "L" (February 24, 2005 Letter).

Dated:   New York, New York
         June 22, 2006

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-144
                                        New York, New York 10007
                                        (212) 788-0895

                              By:       _____
                                        Rippi Gill (RG 5338)
                                        Assistant Corporation Counsel