```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
JOSE SEMORILE, JR.,

                    Plaintiff,
                                              PLAINTIFF'S LOCAL
    -against-                                 CIVIL RULE 56.1
                                              STATEMENT OF
CITY OF NEW YORK, DAVID TWEEDY,               UNDISPUTED FACTS
individually and in his official
capacity as Acting Commissioner of
the NYC DEP, EDWARD WELCH, individually and
in his official capacity as Chief of the      05 Civ. 7261(LAK)
NYC DEP Police Department, and FRANK MILAZZO,
individually and in his official capacity
as Captain of the NYC DEP Police Department.

                    Defendants.
------------------------------------------X
```

Pursuant to Rule 56.1 of the Federal Rules of Civil Procedure, as well as the local rules of this Court, Plaintiff, JOSE SEMORILE, in opposition to Defendants' Motion for Summary Judgment, respectfully submits the following Statement of Material Facts as to which there are genuine issues to be tried:

1. Plaintiff admits paragraph "1" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

2. Plaintiff admits paragraph "2" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

3. Plaintiff admits paragraph "3" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

4. Plaintiff admits paragraph "4" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

5. Plaintiff admits paragraph "5" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

6. Plaintiff admits paragraph "6" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

7. Plaintiff admits paragraph "7" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

8. Plaintiff denies the allegations contained in paragraph "8" that the drug test issued to him on December 29, 2004 was random. Said tests were conducted in retaliation for Plaintiff's vocal opposition to the then Union, SEIU Local 300. There were no other DEP Police Officers who were present to be tested other than Plaintiff and his partner Officer Andreani. (See Defendants' Exhibit "B" pages 71-73, Defendants' Exhibit "C" pages 25 and 48 and Plaintiff's Exhibit "A" pages 25, 36-37 and 40).

9. Plaintiff admits paragraph "9" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

10. Plaintiff denies the allegations contained in paragraph "10". The only police officers that were tested on December 29, 2004 were the Plaintiff and his partner Joseph Andreani both were outspoken critics of their Union and in favor of decertification. (See Defendants' Exhibit "B" page 73 and Defendants' Exhibit "C" page 21).

11. Plaintiff admits that the DEP's random drug screening policy states what is contained in paragraph "11" of Defendants' Rule 56.1 statement, however denies the allegations contained in paragraph "11". Nevertheless,

2

Plaintiff claims that the City of New York does not follow the alleged drug screening policy. (See Defendants' Exhibit "C" page 36 and Plaintiff's Exhibit "D").

12. Plaintiff denies the allegations contained in paragraph "12" except admits that Plaintiff underwent a drug test and said test resulted in a false positive outcome. Plaintiff also admits that he was served with a Notice and Statement of Charges. However, Plaintiff denies ever ingesting any illegal drug, including cocaine, which could have caused a positive result in the drug test that Plaintiff, took on December 29, 2004. (See Defendants' Exhibit "C" page 38).

13. Plaintiff admits paragraph "13" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

14. Plaintiff admits paragraph "14" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

15. Plaintiff admits paragraph "15" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

16. Plaintiff admits paragraph "16" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

17. Plaintiff denies the allegations contained in paragraph "17" except admits that Plaintiff did settle the disciplinary charges and resigned under duress due to the improper representation by the then Union attorney who Plaintiff had previously requested to have removed from his case because of an existing conflict of interest but the Union refused. (See Defendants' Exhibit "C" pages 49-55).

3

18. Plaintiff admits paragraph "18" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

19. Plaintiff admits paragraph "19" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

20. Plaintiff admits paragraph "20" of Defendants' statement of undisputed facts pursuant to Rule 56.1.

**PLAINTIFF'S COUNTER STATEMENTS OF UNDISPUTED FACTS**

1. Defendant Edward Welch was aware that Plaintiff was actively trying to decertify DEP Police from SEUI Local 300. (See Plaintiff's Exhibit "A" page 12).

2. Defendant Edward Welch is the Chief of the New York City DEP Police Department, a City employee and policy maker for the New York City Department of Environmental Protection Police Department. Defendant Welch ordered Plaintiff not to attend the hearings at the Office of Collective Bargaining regarding the decertification of SEIU Local 300 despite Plaintiff being subpoenaed to attend. (See Defendants' Exhibit "B" pages 55 and 67).

3. It was common knowledge throughout New York City DEP that Plaintiff was an active advocate for decertification of the SEIU Local 300. (See Plaintiff's Exhibit "A" page 12).

4. The President of SEUI Local 300, James Golden was good friends with Defendant Frank Milazzo. (See

4

Defendants' Exhibit "C" pages 22 and 64 and Plaintiff's Exhibit "A" page 13).

5. Defendant Frank Milazzo helped James Golden retaliate against the Plaintiff because James Golden helped Milazzo obtain the rank of Captain without having to take a test. (See Defendants' Exhibit "C" page 22).

6. Defendant Milazzo ordered Plaintiff to be tested for drugs. (See Defendants' Exhibit "C" pages 13-14).

7. Plaintiff arrived at the drug-testing site in Queens County (LeFrak City), Defendant Milazzo was present in the building despite his office being located in the City of Kingston, Ulster County, New York. (See Defendants' Exhibit "C" page 14).

8. Defendant Milazzo personally delivered the list containing Plaintiff's name to be tested to the New York City Police Department ("NYPD") office in LeFrak City. (See Defendants' Exhibit "C" pages 14-15).

9. Upon arriving at the NYPD's office in LeFrak City, Plaintiff and his partner, P.O. Joseph Andreani, spoke with an NYPD female officer who informed them that she received the list of DEP officers that were going to be drug tested from "Barbara" of DEP. (See Plaintiff's Exhibit "A" pages 26-28).

10. As a result of Plaintiff and other DEP Police Officers' efforts to decertify the Union, James Golden fired all the DEP Police Delegates. (See Defendants'

5

Exhibit "B" pages 61-62 and Plaintiff's Exhibit "A" pages 19-20).

11. On December 27, 2004, Plaintiff had flu like symptoms and purchased tea from a New York City licensed vendor located on the corner of Bainbridge Avenue and East Gun Hill Road, Bronx, New York. (See Defendants' Exhibit "B" pages 68-71).

12. The tea that Plaintiff ingested was purchased from the New York City licensed vendor and contained small traces of cocaine, which can lead to a false positive test. (See Defendants' Exhibit "C" page 40).

13. The tea that was ingested by the Plaintiff was independently tested by Lindsey Reinhold, Forensic Chemist and found that said tea did in fact contain ingredients, which would result in a false positive of cocaine usage. (See Plaintiff's Exhibit "B").

14. Until December 29, 2004 Plaintiff had never been asked to submit to a random drug test for DEP since he began his employment in 2001. (See Defendants' Exhibit "B" page 72).

15. Plaintiff had received random drug testing in the past by the United States Navy as part of his work as a Naval Reserve Officer approximately three to four times per year. Plaintiff was last tested by the United States Navy in October 2004 and was tested two more times in 2005. (See Defendants' Exhibit "B" page 72 and Defendants' Exhibit "C" pages 11-12 and 33-34).

6

16. Upon Plaintiff's arrival at the drug-testing site in Queens, Defendant Milazzo's vehicle was located in the parking lot. (See Defendants' Exhibit "B" page 75, Defendants' Exhibit "C" page 14 and Plaintiff's Exhibit "A" page 26).

17. Defendant Milazzo was against the new Union, LEEBA, replacing SEIU Local 300. (See Defendants' Exhibit "B" page 77).

18. Defendant Milazzo ordered Plaintiff's drug test in retaliation for Plaintiff's involvement in the decertification of the Union. (See Defendants' Exhibit "B" page 77 and Defendants' Exhibit "C" page 22 and Plaintiff's Exhibit "A" page 21).

19. Plaintiff was not randomly chosen to take a drug test on December 29, 2004. (See Defendants' Exhibit "C" pages 9-10 and 15-16).

20. The drug test that was taken by the Plaintiff was not properly administered by the NYPD, the agency assigned to conduct the test for DEP. (See Defendants' Exhibit "C" pages 16-19 and Plaintiff' Exhibit "A" pages 35-36).

21. Plaintiff informed the test administers that he had ingested the tea prior to December 29, 2004. (See Defendants' Exhibit "C" page 19).

22. The day the Plaintiff was told that his drug test came up positive, he went to his private doctor and had another drug test conducted which produced a negative result. (See Defendants' Exhibit "C" pages 34-35).

23. Marsha Rotheim, DEP legal counsel informed Plaintiff that the doctors at the lab, which conducted his drug test, stated that Plaintiff's score on the drug test was within the amount of cocaine found in the tea that he ingested and not within "street cocaine" that drug addicts ingest. (See Defendants' Exhibit "C" page 36).

24. Despite the City of New York's knowledge that one of its licensed vendors sold tea with cocaine, the City chose not to take any action. (See Defendants' Exhibit "C" page 38).

25. Despite Plaintiff's request to have the tea tested, DEP refused. (See Defendants' Exhibit "C" pages 39 and 45).

26. As a result of the City's refusal to retest the sample and the then Union's sub par legal representation as a result of his opposition to said Union, Plaintiff was forced to resign. (See Defendants' Exhibit "C" page 49).

Dated:   Lake Success, New York
         November 27, 2007

*Rocco G. Avallone* (signature)
Rocco G. Avallone (RA8055)

**Index No.** 05-CV-7261 (LAK)   **Year** 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE SEMORILE, JR.,

                                  Plaintiff,

- against -

CITY OF NEW YORK, et al.,

                                  Defendants.

PLAINTIFF'S LOCAL CIVIL RULE 56.1
STATEMENT OF UNDISPUTED FACTS

**Cronin & Byczek, LLP**
1983 Marcus Avenue - Suite C120
Lake Success, New York 11042
(516) 358-1700

*To:*

*Attorney(s) for*

*Service of a copy of the within*                                                                          *is hereby admitted.*

*Dated:*

...........................................................

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐ **NOTICE OF ENTRY**  that the within is a *(certified)* true copy of a entered in the office of the clerk of the within named Court on                     20

☐ **NOTICE OF SETTLEMENT**  that an Order of which the within is a true copy will be presented for settlement to the Hon.                     one of the judges of the within named Court,
at
on                     20      , at             M.

*Dated:*

**Cronin & Byczek, LLP**
1983 Marcus Avenue – Suite C120
Lake Success, New York 11042
(516) 358-1700

*To:*

N 912 CL